UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

LONDELL AUSTIN,                           No. 2:10-cv-02891-MCE-DAD

      Plaintiff,

  v.                                        <u>ORDER</u>

J. BAUER, et al.,

      Defendants.

----oo0oo----

Plaintiff Londell Austin ("Plaintiff") initiated this action against Defendants J. Bauer and J. Huff ("Defendants"), officers of the City of Vallejo Police Department, for injuries sustained when, during an investigation arising out of a response to a 911 call, Plaintiff was tasered.  Presently before the Court is Defendants' Motion for Summary Judgment ("Motion").  For the following reasons, Defendants' Motion is GRANTED.[1]

///

---

   [1] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefing.  E.D. Cal. Local Rule 78-230(h).

1

1

## BACKGROUND[2]

2

3      On July 11, 2009, Defendants responded to a 911 call in

4 which a woman, Barbara Austin, had reported that her estranged

5 husband was breaking into her residence.  Ms. Austin had advised

6 the dispatcher that her husband "was trying to break inside,

7 break the sliding door, and that he wasn't living there and so

8 [she] didn't want him there."  Deposition of Barbara Austin

9 ("Austin Depo."), 40:20-24.  Defendants arrived at the residence

10 at 1:57 a.m. and found Plaintiff, who is six feet two inches

11 tall, and who weighed approximately 260 pounds at the time, in

12 the backyard attempting to pry open the sliding glass door with

13 either a screw driver or a metal bar.  Defendants thus treated

14 the situation as falling "between a possible burglary and some

15 type of domestic dispute."  Deposition of Jeremy Huff ("Huff

16 Depo."), 37:18-21.

17      Defendants asked Plaintiff to come to the front of the

18 house, where they knocked on the door to contact Ms. Austin.

19 Ms. Austin inquired as to Plaintiff's location and informed

20 Defendants she was concerned Plaintiff would get into the house,

21 where her ten-year old grandson was located.

22      By this time, Plaintiff had left the backyard and joined

23 Defendants in the driveway.  Plaintiff indicated he needed to get

24 some uniforms out of the house.

25 ///

26

27      [2] Unless otherwise stated, the following facts, all of which
are undisputed, are taken, at times verbatim, from Defendants'
Separate Statement of Undisputed Facts and Plaintiff's response
28 thereto.

2

1   Defendants then began to conduct an investigation into
2   whether Plaintiff was a resident in Ms. Austin's home.
3   Ms. Austin told Defendant Huff that Plaintiff did not keep any
4   clothing in the house.  Defendant Huff thereafter entered the
5   house, and indeed found no clothing or toiletries where Plaintiff
6   had indicated they would be.  Plaintiff then informed Defendant
7   Huff that Ms. Austin may have hidden his clothing in the garage,
8   after which Defendant Huff continued his search there.[3]

9   During the time Defendant Huff searched the residence,
10  Defendant Bauer remained on the porch with Plaintiff.  The
11  officer asked Plaintiff about the truck he had driven to
12  Ms. Austin's residence, and Plaintiff indicated the truck
13  belonged to him.  In fact, the truck was registered to a third
14  party, Betty Augustina.  Plaintiff, however, refused to respond
15  to inquiries regarding the identity of Ms. Augustina, stating
16  only that "[t]his doesn't concern Betty."  Deposition of Londell
17  Austin ("Plaintiff Depo."), 58:17-59:1.

18  After hearing that the license plate check had come back
19  indicating Defendant was not the vehicle's registered owner,
20  Defendant Huff then heard Defendant Bauer yelling or saying on
21  the radio something to the effect, "He's coming in behind you,
22  Huff," at which time Defendant Huff heard a commotion inside the
23  house.  Huff Depo., 47:6-8.  Plaintiff entered the house and went
24  straight up to the bedroom with Defendant Bauer following him.
25  ///
26  ///

27  ────────────────
28      [3] It turns out that Ms. Austin had hidden Plaintiff's
    clothing in boxes and suitcases in the garage.

3

1  When he reached the bedroom, Plaintiff advised Defendant Bauer he

2  was going to go to bed, and he took off his clothes, down to his

3  shorts.  Plaintiff then attempted to show Defendant Bauer check

4  stubs on his night stand.  Defendant Bauer said "I don't need to

5  see all that."  Austin Depo., 76:12-15.

6      In the meantime, Defendant Huff, who had been trained and

7  had learned through experience that "people often keep weapons,

8  guns and the like in bedrooms, under beds, in dressers, and

9  things like that," ran into the bedroom and tasered Plaintiff.

10  According to Defendant Huff, it was a concern to him "that

11  [Plaintiff] not only want[ed] to get into the house, but he

12  want[ed] to rush up the stairs into the bedroom."  Huff Depo.,

13  60:1-5.

14      Ms. Austin further testified that, during the above events,

15  she had temporarily left the bedroom to check on her grandson.

16  She returned and twice asked the officers if they could make

17  [Plaintiff] "get out of here."  Austin Depo., 81:15-21.  It was

18  after her second request that Defendant Huff deployed the taser.

19  Upon being tasered, Plaintiff fell onto his bed.  He was then

20  taken to a hospital for examination, and he was subsequently

21  charged with violating California Penal Code § 148(a)(1) by

22  resisting, delaying or obstructing an officer in the discharge of

23  his official duty.

24  ///

25  ///

26  ///

27  ///

28  ///

1    Accordingly, Plaintiff initiated this action and now
2    proceeds on his First Amendment Complaint ("FAC"), which brings
3    one cause of action against both Defendants arising under
4    42 U.S.C. § 1983 for violation of the Fourth and Fourteenth
5    Amendments on the separate theories that Defendants' use of the
6    taser constituted excessive force and that Defendants
7    unreasonably detained Plaintiff, in violation of the Fourth
8    Amendment.  Defendants now move for summary judgment on the basis
9    that: 1) Plaintiff is not entitled to judgment on his excessive
10   force claim; 2) even if Plaintiff could be entitled to judgment,
11   his excessive force claim fails because Defendants are entitled
12   to qualified immunity; 3) Defendants had probable cause to draw
13   their tasers and to take Plaintiff into custody; and 4) even if
14   Defendants lacked probable cause to have seized Plaintiff, they
15   are protected by qualified immunity.  For the following reasons,
16   Defendants' Motion is GRANTED.

17
18                              **STANDARD**
19
20       The Federal Rules of Civil Procedure provide for summary
21   judgment when "materials in the record, including depositions,
22   documents, electronically stored information, affidavits or
23   declarations, stipulations..., admissions interrogatory answers,
24   or other materials" "show[] that there is no genuine dispute as
25   to any material fact and the movant is entitled to judgment as a
26   matter of law."  Fed. R. Civ. P. 56(a), (c).
27   ///
28   ///

One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-324 (1986).

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense.  <u>See</u> Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense or the part of each claim or defense–on which summary judgment is sought."); <u>see</u> <u>also</u> <u>Allstate Ins. Co. v. Madan</u>, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); <u>France Stone Co., Inc. v. Charter Township of Monroe</u>, 790 F. Supp. 707, 710 (E.D. Mich. 1992).  The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment.  <u>See</u> Fed. R. Civ. P. 56(a), (c); <u>Mora v. ChemTronics</u>, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex</u>, 477 U.S. at 323 (quoting Rule 56(c)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 585-87 (1986); <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S. 253, 288-89 (1968).

///

///

///

In attempting to establish the existence of this factual dispute, the opposing party must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, <u>i.e.</u>, the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 251-52 (1986); <u>Owens v. Local No. 169, Assoc. of Western Pulp and Paper Workers</u>, 971 F.2d 347, 355 (9th Cir. 1987). Stated another way, "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." <u>Anderson</u>, 477 U.S. at 251 (quoting <u>Schuylkill and Dauphin Improvement Co. v. Munson</u>, 81 U.S. 442, 448 (1871)). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c)), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 586-87.

///

///

///

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

**ANALYSIS**

**A.   Defendants' Motion for Summary Judgment as to Plaintiff's Excessive Force Claim.**

Plaintiff claims that Defendants' "deployment of a Taser on the person of [Plaintiff], who was, at the time, located non-threateningly in his bedroom wearing his boxer shorts, having not leveled any threat of any kind upon the Defendants or the party calling for the Defendants' assistance" constituted a use of unconstitutionally excessive force.  Opposition, 1:21-24. Defendants, to the contrary, argue that the force used was not excessive and, alternatively, that they are entitled to qualified immunity.  Because, based on the undisputed facts in the record, the Court agrees that Defendants are entitled to qualified immunity, Defendants' Motion is GRANTED.

///
///
///
///

1    "[G]overnment officials performing discretionary functions
2    are shielded from liability for civil damages insofar as their
3    conduct does not violate clearly established statutory or
4    constitutional rights of which a reasonable person would have
5    known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In
6    determining whether qualified immunity applies, the Court should
7    consider: 1) whether the facts, as alleged by Plaintiff, "make
8    out a violation of a constitutional right"; and 2) whether
9    Plaintiff's right was "clearly established" at the time of the
10   alleged violation.  Pearson v. Callahan, 555 U.S. 223, 232
11   (2009).  Courts can exercise discretion in deciding which of the
12   two prongs should be addressed first.  Id. at 236.  In this case,
13   the Court determines the right alleged by Plaintiff was not
14   "clearly established" at the time of the incident alleged in the
15   Complaint.  Accordingly, the Court need not address the first
16   prong above.

17       In determining whether Plaintiff's right was clearly
18   established, this Court considers Supreme Court and Ninth Circuit
19   precedent existing at the time of the alleged act.  Community
20   House, Inc. v. City of Boise, Idaho, 623 F.3d 945, 967 (9th Cir.
21   2010).  "In the absence of binding precedent, courts should look
22   at available decisions of other circuits and district courts to
23   ascertain whether the law is clearly established."  Id.   The
24   Court asks whether the contours of the right "were sufficiently
25   clear that every reasonable official would have understood that
26   what he is doing violates that right."  Mattos v. Agarano,
27   661 F.3d 433, 442 (9th Cir. 2011) (internal citations and
28   quotations omitted).

1  "The plaintiff bears the burden to show that the contours of the
2  right were clearly established." <u>Clairmont v. Sound Mental</u>
3  <u>Health</u>, 632 F.3d 1091, 1109 (9th Cir. 2011).  The Supreme Court
4  does "not require a case directly on point' to define any
5  underlying constitutional right, but 'existing precedent must
6  have placed the statutory or constitutional question beyond
7  debate.'"  <u>Ashcroft v. Al-Kidd</u>, 131 S. Ct. 2074, 2083 (2011).

8        Defendants in this case are entitled to qualified immunity
9  as to Plaintiff's excessive force claims because Plaintiff has
10 failed to show that, under the facts of this case, the law
11 regarding the use of tasers was clearly established in July of
12 2009.  If fact, it was not until 2010 and 2011 that the Ninth
13 Circuit definitively spoke on the issue at all.  <u>See</u> <u>Bryan v.</u>
14 <u>MacPherson</u>, 630 F.3d 805 (9th Cir. 2010) (concluding the law
15 pertaining to the use tasers was not clearly established in
16 2005); <u>Mattos</u>, 661 F.3d 433 (concluding the same as to the law in
17 2004 and 2006); <u>see also</u> <u>Burns v. Barreto</u>, 2012 WL 2258555, *13
18 (compiling cases holding that the law pertaining to the use of
19 Tasers was not clearly established in 2008 or 2009).
20 Accordingly, this Court now concludes that, at the time of the
21 incident in this case, reasonable officers would not have known
22 that tasering a 260-pound man suspected of either burglary or
23 domestic violence as he attempts to access an unsecured night
24 stand within a residence during the course of a late-night police
25 investigation triggered by an emergency 911 call, was
26 unconstitutional.  <u>See</u> <u>id.</u>  Accordingly, Defendants' Motion for
27 Summary Judgment as to Plaintiff's excessive force claim is
28 GRANTED.

10

1
2

**B.   Defendants' Motion for Summary Judgment as to
      Plaintiff's Unreasonable Seizure Claim.**

3       According to Plaintiff, he was unreasonably detained in
4  violation of the Fourth Amendment when officers initially drew
5  their tasers on him in the bedroom.  According to Defendants,
6  however, they had probable cause to arrest Plaintiff at that
7  time, and Plaintiff's detention was thus reasonable.  The Court
8  agrees with Defendants.

9       "An arrest must be supported by probable cause." United
10 States v. Del Vizo, 918 F.2d 821, 825 (9th Cir. 1990).  The test
11 for probable cause is whether 'facts and circumstances within the
12 officer's knowledge are sufficient to warrant a prudent person,
13 or one of reasonable caution, [to believe], in the circumstances
14 shown, that the suspect has committed, is committing or is about
15 to commit an offense.'"  United States v. Greene, 783 F.2d 1364,
16 1367 (9th Cir. 1986) (quoting Michigan v. DeFillippo, 443 U.S.
17 31, 37 (1979)).

18      Under the circumstances at issue here, at the time officers
19 drew their tasers, they had developed probable cause to arrest
20 Plaintiff for either trespass or violation of California Penal
21 Code § 148(a)(1).  Notably, Plaintiff does not contest that
22 officers had probable cause to arrest him for trespass and argues
23 only that the officers failed to develop probable cause
24 pertaining to any violation of Penal Code § 148(a)(1).  Plaintiff
25 thus effectively concedes a reasonable officer could have
26 believed Plaintiff was trespassing and therefore had committed
27 and was continuing to commit a crime.
28 ///

11

First, officers were dispatched to Ms. Austin's residence in response to an emergency 911 call in which Ms. Austin had indicated that her estranged husband was trying to break into her house through a sliding glass door. When those officers arrived on the scene just shy of 2:00 a.m., they found Plaintiff in the backyard of Ms. Austin's residence trying to pry open the slider with a screw driver or a metal bar. When officers searched the residence, they found no objective indication that Plaintiff had any right to be on Ms. Austin's property. Accordingly, by the time Plaintiff entered the house and made his way to the bedroom, at which time Ms. Austin twice asked officers if they could make Plaintiff "get out of here," probable cause existed to believe Plaintiff had committed or was committing a trespass. See, e.g., Cal. Pen. Code § 602(o) (trespass occurs when a person refuses or fails "to leave land, real property, or structures belonging to or lawfully occupied by another and not open to the general public, upon being requested to leave by...the owner, the owner's agent, or the person in lawful possession"); see also Blankenhorn v. City of Orange, 485 F.3d 463, 475 (9th Cir. 2007) ("inquiry is not whether [Plaintiff] was trespassing," but "whether a reasonable officer had probable cause to think he could have been").

In addition, in light of Plaintiff lying to officers and walking away from officers and into the house during an ongoing investigation, sufficient probable cause also existed to arrest Plaintiff for violation of Penal Code § 148(a)(1), which makes it a crime to willfully resist, delay or obstruct a peace officer. ///

1  See, e.g., Benas v. Baca, 159 F. App'x 762, *2 (9th Cir. 2005)
2  (probable cause existed to arrest individual for violating Penal
3  Code § 148 when person "obstruct[ed] the defendant officers'
4  efforts to investigate [an] earlier disturbance and to defuse the
5  situation").  It would be reasonable for any officer to believe
6  that each of the aforementioned acts, undertaken by Plaintiff
7  while officers continued to investigate Ms. Austin's claim that
8  Plaintiff was breaking into her house, would be sufficient to
9  justify Plaintiff's arrest for delaying or obstructing an
10 officer.  Accordingly, based on the undisputed facts before the
11 Court, Defendants had probable cause to arrest Plaintiff, and
12 they therefore cannot be liable for violating Plaintiff's Fourth
13 Amendment right to be free from an unreasonable seizure.
14 Defendants' Motion for Summary Judgment is thus GRANTED.

15

16                        **CONCLUSION**

17

18     For the reasons stated above, Defendants' Motion for Summary
19 Judgment is GRANTED.  The Clerk of the Court is directed to enter
20 judgment in favor of Defendants to close this case.

21     IT IS SO ORDERED.

22
   Dated: July 23, 2012
23

24

25                        MORRISON C. ENGLAND, JR.
                          UNITED STATES DISTRICT JUDGE
26

27

28

                               13